UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CLARENCE G. TAYLOR, | ) |
| Plaintiff | ) |
| | ) CAUSE NO. 3:03-CV-929 RM |
| CIVIL CITY OF SOUTH BEND POLICE DEPARTMENT, | ) |
| Defendant | ) |

OPINION and ORDER

Clarence Taylor sued the South Bend Police Department alleging it violated his constitutional rights. After the conclusion of discovery, the defendant moved for summary judgment on all claims. For the reasons set forth below, the court grants the defendant's motion.

The following facts are taken from the record, specifically Mr. Taylor's statement of facts and submitted video tape, and are viewed as favorably to Mr. Taylor as is reasonable. In the early morning hours of December 31, 2001, an alarm sounded at Mr. Taylor's Olive Street convenience store. Steven Harper, who is employed as the store's manager, came to the store, entered, and tried to disengage the alarm. Seeing police approaching the store's entrance, Mr. Harper walked out of the store. The police asked him for identification, frisked him, and placed him in a police car, telling Mr. Harper this was standard protocol until they could identify who he was, why the alarm went off, and to ensure nothing illegal

was going on. Whether Mr. Harper knew the code to turn off the alarm or he was the one to turn the alarm off are unclear, but he could not explain the alarm code identifier that would explain why the alarm was going off.

About this time, Mr. Taylor drove past the store and noticed there were police cars parked in front. Mr. Taylor parked and walked into the store, identified himself as the owner of the store, and began asking why his nephew (Mr. Harper) was in the police car. After providing the police with Mr. Harper's name, Mr. Taylor inquired as to why the police were at his shop. The police told Mr. Taylor of the alarm going off and their investigation as to why it had been activated.

After Mr. Taylor's arrival, the police let Mr. Harper out of the police car. Mr. Harper was upset because the police didn't believe his explanation of what had happened, and Mr. Taylor tried to calm him by telling him the police were just doing their job. One of the police officers approached Mr. Harper with an alarm report, which he signed without reading, and the police departed from the scene.

Sometime later that morning, Mr. Taylor learned from the security surveillance tape that after the police detained Mr. Harper, they searched his store for about seven minutes until Mr. Taylor arrived on the scene.

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant

2

is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for the motion, and identifying the evidence that demonstrates the lack of any genuine issue of material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *(quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

Mr. Taylor sues the South Bend Police Department in its official capacity as a municipal entity. In Monell v. Department of Social Svs. of the City of New York, 436 U.S. 658 (1978):

> the Supreme Court established both the fact that municipalities and other local government units [were] included among those persons to whom § 1983 applies, and the limits of such actions. Most importantly, Monell held that a municipality cannot be held liable under § 1983 on a *respondeat superior* theory. Instead, municipal liability exists only when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. [The Court] identified three different ways in which a municipality or other local governmental unit might violate § 1983: (1) through an express policy that, when enforced, causes a constitutional deprivation; (2) through a wide-spread practice that although not authorized by written law and express policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) through an allegation that the constitutional injury was caused by a person with final decision policymaking authority.

Calhoun v. Ramsey, — F.3d —, 2005 WL 1163670, *3 (7th Cir. May 17, 2005) (quotations and citations omitted).

Mr. Taylor would bear the burden of proof at trial to prove the City of South Bend Police Department violated § 1983, and at this stage it is his responsibility to show the court that a reasonable jury could find in his favor on his claims. Lawrence v. Kenosha County, 391 F.3d at 842. Instead of attempting to prove liability through one of the three venues identified in Monell, Mr. Taylor merely recites the factual events of December 31, 2001 and concludes that his constitutional rights were violated. This isn't enough to defeat the summary

4

judgment motion; even if these facts created some genuine issue of material fact as to a constitutional violation of Mr. Taylor's rights:

> [p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved.

Arlotta v. Bradley Center, 349 F.3d 517, 522 (7th Cir. 2003) (quoting Oklahoma City v. Tuttle, 471 U.S. 808, 823-824 (1985)).

The record contains no evidence of an express policy that, when enforced, causes a constitutional deprivation; a custom or usage with the force of law; or a person with final decision policymaking authority of which a reasonable juror could conclude Mr. Taylor is entitled to relief under the law. Therefore, the defendant's motion for summary judgment [Doc. No. 17) is GRANTED, and the clerk shall ENTER judgment for the defendant on all claims.

SO ORDERED.

ENTERED: June 6, 2005

    /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court

cc:   C. Taylor
       J. Broden